UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- x
JOHN NEWTON, individually and on
behalf of all other similarly situated,

                            Plaintiff,

              - against -

KRAFT HEINZ FOODS COMPANY, and
DAISY BRAND, LLC,

                            Defendants.
----------------------------------------------------------------- x

**MEMORANDUM & ORDER**

16 CV 04578 (RJD) (RLM)

DEARIE, District Judge:

## I. OVERVIEW

Plaintiff, John Newton, brings this putative class action against Defendants Kraft Heinz Foods Company and Daisy Brand (collectively, "Defendants"). He alleges the following causes of action for allegedly deceptive sour cream labeling: (i) breach of warranty in violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §2301 *et seq.*, and state law, N.Y. UCC § 2-313(1)(a), (ii) deceptive acts and practices in violation of New York General Business Law ("N.Y. GBL") § 349; and (iii) false advertising in violation of N.Y. GBL § 350. For the reasons set forth below, Defendants' motions to dismiss are granted as to all claims.[1]

## II. FACTUAL BACKGROUND

The First Amended Complaint alleges that Defendants deceptively label their sour cream products "All Natural" (Kraft) and "Pure & Natural" (Daisy) because the products' primary ingredient, "Cultured Pasteurized Grade A Milk and Cream," is derived from cows whose feed might contain genetically modified organisms ("GMOs") and who might be subject to "non-natural" accelerated milk production processes. First Amended Complaint, Dkt. 26, ¶¶ 6, 46-49,

---

[1] While each Defendant has filed and argued separate and distinct motions to dismiss, the Court has elected to discuss their respective legal arguments jointly, as the motions are granted on substantially the same basis.

63-66 (hereinafter "Compl."). Plaintiff does not allege that the sour cream contains GMOs or even that the fermented milk used to make the sour cream contains GMOs—only that dairy cows *might* eat genetically modified feed and *might* be subject to accelerated milk production processes and that this possibility somehow makes the cows' milk—and by extension the Defendants' sour cream products—unnatural and their "natural" labeling deceptive. Id. ¶¶ 5, 67, 71. Defendants do not dispute that their cows might eat genetically modified feed or that they might be subject to accelerated milk production processes but argue that Plaintiff's allegations, if proven, do not render their "natural" labeling deceptive as a matter of law. Instead, Defendants argue Plaintiff's "implausible inferences stacked upon questionable assumptions" regarding the nature and quality of the sour cream products defy common sense such that no reasonable consumer would be deceived by Defendants' sour cream labeling. Kraft Mot. to Dismiss, Dkt. 37 (hereinafter "Kraft Br.") at 8.

Between May 1, 2011 and this suit's filing in 2016, Plaintiff purchased Defendants' sour cream products. Compl. ¶ 12. Plaintiff claims he relied on the "natural" labeling as an indication that the products did not contain any GMO ingredients, and that cows, whose milk produced the sour cream, would not have eaten GMO feed, as is required for products with the heavily-regulated "organic" label. Id. ¶¶ 15-16. Plaintiff alleges that he would not have purchased Defendants' sour cream had he known it might be derived in any way from animals that ate genetically modified feed or that were subjected to accelerated milk production processes and takes the position that no reasonable consumer would consider Defendants' products "natural" under these circumstances. Id. Plaintiff seizes upon the Department of Agriculture's ("USDA") clearly defined criteria for the term "organic"[2], a term not used on the subject

---

[2] The USDA definition of "organic" states that: "[t]he use of genetic engineering, or genetically modified organisms (GMOs), is prohibited in organic products. This means an . . . organic cow can't eat GMO alfalfa or corn." See

2

products, and argues that reasonable consumers would likely equate the heavily-regulated term "organic" with the word "natural." Compl. ¶¶ 7-8. As a result, plaintiff argues, products that are not "organic" under USDA regulations cannot be labeled "natural" without deceiving reasonable consumers even though no analogous regulation even exists for "natural" labeling. Compl. ¶ 50. Plaintiff's Complaint purports to rely on scholarly research on the meaning of both "organic" and "natural," but these sources tellingly lack any controlling definition of "natural." Id. ¶¶ 68-70. Plaintiff's Complaint also relies on two consumer surveys about food labeling.³ Relying on inapposite USDA regulations and thinly supported consumer surveys, Plaintiff claims Defendants have been deliberately deceptive and misleading in their use of the term "natural."

### III. LEGAL STANDARDS

*A. Motion to Dismiss. Fed. R. Civ. P. 12(b)(6).*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. This "plausibility standard" "asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement

---

*Organic 101: Can GMOs be used in Organic Products?*, U.S. DEPARTMENT OF AGRICULTURE (May 17, 2013), https://www.usda.gov/media/blog/2013/05/17/organic-101-can-gmos-be-used-organic-products. USDA regulations do not define or otherwise regulate "natural" labeling.

³ Plaintiff points to one 1000-person survey, which found that the majority of those interviewed believed that the "natural" label means consumers will get some of the same benefits associated with organic-labeled products. The other consumer survey Plaintiff cites is no longer available online.

to relief." Id. (internal citations omitted). Moreover, in evaluating the sufficiency of the allegations in the Complaint the Court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden States Warriors, 266 F.3d 979, 988 (9th Cir. 2001); see also Martinez v. Santamaria, Case No. 14-cv-7634, 2015 WL 4241398, at *3 (S.D.N.Y. Jul. 13, 2015).

 B. *Breach of Warranty*

 Plaintiff alleges Defendants violated the MMWA and provisions of the New York Uniform Commercial Code through the use of "natural" on their sour cream labeling. Compl. ¶ 132, 175.

 The MMWA is a remedial statute, the principal purpose of which is "to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products." Pyskaty v. Wide World of Cars, LLC, 856 F.3d 216, 222 (2d Cir. 2017) (quoting 15 U.S.C. § 2302(a)). The MMWA secures federal jurisdiction where a consumer is a damaged by a supplier's failure to comply with a written warranty. Id. The MMWA defines a "written warranty" as "any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time." 15 U.S.C. § 2301(6)(A).

 Relatedly, to bring a breach of warranty action under the New York Uniform Commercial Code, a plaintiff must allege (i) the existence of a warranty, (ii) reliance and (iii) breach of the warranty resulting in injury to the buyer. A warranty under New York law is some "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of

the basis of the bargain," Buonasera v. Honest Co., Inc., 208 F. Supp. 3d 555, 567 (S.D.N.Y. 2016) (citing N.Y. UCC § 2-313(1)(a)), or otherwise has the "natural tendency" to "induce the buyer to purchase" the warranted goods, Ault v. J.M. Smucker Co., Case No. 13-cv-3409, 2014 WL 1998235, at *6 (S.D.N.Y. May 15, 2014). It is not enough to allege a defendant made "generalized statements." Buonasera, 208 F. Supp. 3d at 567. Instead, the plaintiff must allege the defendant made a specific "factual claim" about the subject product upon which the plaintiff could rely. Id.

C. *The Reasonable Consumer Test*

Plaintiff also invokes N.Y. GBL §§ 349-50 to allege Defendants engaged in deceptive and misleading labeling and false advertising. Compl. ¶¶ 140, 194; N.Y. GBL § 349(a) ("Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."); N.Y. GBL § 350 ("False advertising in the conduct of any business, trade or commerce . . . is hereby declared unlawful"). Section 349 and 350 claims have three elements: (i) defendant's challenged acts or practices were directed at consumers, (ii) the acts or practices were misleading in a material way, and (iii) plaintiff sustained injury as a result. Cohen v. JP Morgan Chase & Co., 498 F.3d 111, 126 (2d Cir. 2007) (citing Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000)).

Whether the challenged acts or practices are "misleading" is shaped by the "reasonable consumer" standard. Mantikas v. Kellogg Co., Case No. 17-2011, 2018 WL 6494356, at *2 (2d Cir. Dec. 11, 2018); Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015). As a general matter, the reasonable consumer test is a fact-based inquiry that cannot be resolved in a Rule 12(b)(6) motion. However, "in rare situations, courts may resolve the issue at the motion-to-dismiss stage, where the pleading does not plausibly allege that a reasonable consumer would be

5

deceived." Podpeskar v. Dannon Co., Inc., Case No. 16-cv-8478, 2017 WL 6001845, at *3 (S.D.N.Y. Dec. 3, 2017) (citing Williams v. Gerber Prods. Co., 552 F.3d 934, 939 (9th Cir. 2008)).

D. *"Natural" (Un)Defined*

Crucial to all of Plaintiff's claims is whether the term "natural," when featured on and in the context of a food label, has some specific meaning regarding the nature and quality of the food product such that "misuse" of the term could deceive a reasonable consumer. However, at this time, the FDA has not developed a definition for the term "natural" and claims to be considering proposed regulation, including the extent to which a "natural" label can ever include foods with some connection to genetic modification or should otherwise take into account "the manner in which an ingredient is produced or sourced."[4] Use of the Term "Natural" in the Labeling of Human Food Products; Request for Information and Comments, 80 Fed. Reg. 69905, 69908 (Nov. 12, 2015). To that end, the agency's website acknowledges that "[f]rom a food science perspective, it is difficult to define a food product that is 'natural' because the food has probably been processed and is no longer the product of the earth . . . [h]owever, the agency has not objected to the use of ["natural" labeling] if the food does not contain added color, artificial flavors, or synthetic substances." See FDA.gov. Moreover, though it does not address "natural" labeling specifically, recently-enacted federal law explicitly does not "prohibit a food derived from an animal to be considered a bioengineered or genetically modified food solely because the

---

[4] In 2015, the FDA requested comments from the public on the use of the term "natural" in food labeling. FDA Constituent Updates, *FDA Requests Comments on Use of the Term "Natural" on Food Labeling,* November 10, 2015, https://wayback.archive-it.org/7993/20171114120514/https://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/LabelingNutrition/ucm456090.htm (hereinafter "FDA.gov"). In particular, the FDA sought information and public comment on questions including: "Whether it is appropriate to define the term natural[;] [i]f so, how the agency should define 'natural,'[;] and [h]ow the agency should determine appropriate use of the term on food labels." Id. The comment period closed May 10, 2016. Id. There has been no further instruction from the FDA on the meaning of "natural."

animal consumed feed produced from, containing or consisting of a bioengineered substance." 7 U.S.C. § 1639b. Accordingly, although "natural" has no single definition sanctioned by this Court's co-branches of government, the legislature has not ruled out the possibility that a product derived from some genetically modified substance—such as sour cream, produced from milk, that came from a cow, that might have eaten genetically modified feed—may not itself be genetically modified food.

## IV. DISCUSSION

### A. *Primary Jurisdiction*

As an initial matter, Defendants suggest this Court apply the primary jurisdiction doctrine and defer action pending "final guidance" from the FDA. Kraft Br. at 5. The primary jurisdiction doctrine "promot[es] proper relationships between the courts and administrative agencies charged with particular regulatory duties" and should be applied "whenever the enforcement of [a] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body", rather than the judiciary. Goldemberg v. Johnson & Johnson Consumer Cos., Inc., 8 F. Supp. 3d 467, 476 (S.D.N.Y. 2014) (citing Ellis v. Tribune Television Co., 443 F.3d 71, 81 (2d Cir. 2006)). In determining whether to apply the doctrine, courts weigh several factors on a case-by-case basis, including whether (i) the issue presented is within the conventional wisdom of judges or involves technical considerations within an agency's expertise, (ii) the issue should be decided in accordance with an agency's discretion, (iii) there is a danger of inconsistent rulings and (iv) a prior application to the agency has been made to resolve the issue. Ellis, 443 F.3d at 82-83.

The primary jurisdiction doctrine is not applicable here. There has been no promise as to when—indeed, not even an indication *if*—there will be any guidance on the definition of natural

7

from the federal agencies. Kraft Br. at 5. In the meantime, cases clutter dockets around the country at considerable costs, spawning a variety of resolutions in a number of specific factual settings while the bureaucracy reacts in silence. Against this backdrop of regulatory inaction and because Plaintiff's claims, are "far less about science than [they are] about whether a label is misleading" as a matter of law, this case clearly lies within the realm of judicial competence and the "conventional experience of judges" to apply the law. See In re Frito-Lay North Am., Inc. All Natural Litig., Case No. 12-MD-2413 (RRM), 2013 WL 4647512, at *8 (E.D.N.Y. Aug. 29, 2013) (citing Goya Foods, Inc. v. Tropicana Products, Inc., 846 F.2d 848, 851 (2d Cir. 1988)); see also Goldemberg, 8 F. Supp. 3d at 476 ("[W]hether the use of the term 'Active Naturals' is deceptive or misleading [is] a question which courts are eminently well suited to entertain"). Indeed, resolving the issue presented—whether a reasonable consumer would be deceived by Defendants' labeling—could "not risk usurping the FDA's interpretive authority or undermine its considered judgments," because, frankly, there has been neither commanding interpretive authority nor considered agency judgment on this topic. In re Frito-Lay North Am., Inc. All Natural Litig., 2013 WL 4647512, at *8. Thus, while I approach this issue with some reluctance, the judicial voice is no less equipped than the agencies to speak to this question of consumer deception, particularly in the absence of any agency regulation of the use of the term "natural."

### B. Preemption

Defendants next argue that to the extent the Court declines to stay this action, Plaintiff's state law claims must be dismissed because they are preempted by federal law—specifically, the recently enacted National Bioengineered Food Disclosure Standard—which is intended to provide a mandatory uniform national standard for the disclosure of information about the "bioengineered status of goods." 7 U.S.C. § 1639 *et seq.* However, because the statute explicitly

prohibits a food from being considered bioengineered or genetically modified "solely because the animal consumed feed produced from, containing or consisting of a bioengineered substance," whereas state law protects consumers more generally from a myriad of deceptive acts and practices, the Court does not agree that Plaintiff's state law claims are preempted.

The general presumption is that "the historic police powers of the States [are] not to be superseded" by Federal law, unless that is "the clear and manifest purpose of Congress." Wyeth v. Levine, 555 U.S. 555, 565 (2009). In particular, the "regulation of health and safety, including laws regulating the proper marketing of food, are traditionally within states' historic police powers." In re Kind "Healthy and All Natural" Litig., 287 F. Supp. 3d 457, 462 (S.D.N.Y 2018). However, where a Federal statute explicitly preempts state law, courts must read the preemption clause narrowly and evaluate the extent to which there is preemption based on "a fair understanding of congressional purpose." Medtronic, Inc. v. Lohr, 518 U.S. 470, 486 (1996). In other words, courts must work cautiously and carefully, examining the text, structure and purpose of the statute at issue, as well as the regulatory scheme the statute was designed to effectuate, in determining the statute's preemptive reach and whether the state law in question is preempted. Id. at 485-86.

The National Bioengineered Food Disclosure Standard explicitly "precludes states from establishing state-specific food labeling standards that deviate from the GMO labeling standards codified by the USDA." In re Kind LLC "Healthy and Natural" Litig., 287 F. Supp. 3d at 462 (citing 7 U.S.C. § 1639). Specifically, the statute's preemption clause provides that no state may "directly or indirectly establish . . . any requirement relating to the labeling of whether a food . . . contains an ingredient that was developed or produced using genetic engineering." Id. Here, we

9

confront whether provisions of New York consumer protection law run afoul of the National Bioengineered Food Disclosure Standard's preemption provision.

Plaintiff's state law claims relate to breach of warranty, deceptive labeling and false advertising. The statutes upon which these claims are premised do not impose a specific GMO labeling standard or requirement but simply protect consumers from deceptive business practices. N.Y. GBL §§ 349(a), 350, N.Y. UCC §2-3131(a). Indeed, where, as here, "plaintiff[s] are only alleging that [Defendants' labeling] might be untrue and misleading if [Defendants] in fact do use . . . processing techniques that render an ingredient genetically modified," such allegations relate only to the *truth* of Defendants' labels and whether such labels might deceive reasonable consumers, not whether state law imposes some more stringent labeling standard with respect to genetically modified food that is preempted by federal law. In re Kind LLC "Healthy and Natural" Litig., 287 F. Supp. 3d at 462 (citing Parker v. J.M. Smucker Co., Case No. 13-cv-0690, 2013 WL 4516156, at *4 (N.D. Cal. Aug. 23, 2013)). The state statutory scheme imposes a truth-telling requirement, not an affirmative disclosure requirement. State law does not mandate Defendants' products contain specific wording or that the packaging disclose that the cows that produced the milk that created the sour cream might have eaten GMO feed. The law simply requires that *if* there is a label, it cannot be deceptive or misleading to the reasonable consumer. In re Kind LLC "Healthy and Natural Litig., 287 F. Supp. 3d at 463 ("[Defendant] may not affirmatively be required to disclose its use of bioengineered ingredients . . . but Plaintiffs are only alleging that the non-GMO claim might be untrue and misleading if [Defendant] in fact does use bioengineered ingredients"). As a result, Plaintiff's state law claims are not preempted by the National Bioengineered Food Disclosure Standard.

10

Because the primary jurisdiction doctrine is inapplicable and Plaintiff's state law claims are not preempted, the Court now turns to Plaintiff's substantive claims under state and federal law. Plaintiff raises state and federal breach of warranty claims as well as state deceptive practices and false advertising claims.

*C. Breach of Warranty Claims: MMWA and the New York Uniform Commercial Code*[5]

The MMWA is a federal remedial statute for consumers who have been damaged by a supplier's failure to comply with its own written warranty—defined as a "written affirmation of fact or written promise" that "affirms or promises" the consumer good to which it relates is "defect free" or "will meet a specified level of performance over a specified period of time." In re Frito-Lay North Am., Inc. All Natural Litig., 2013 WL 4647512 at *17 (citing Wilbur v. Toyota Motor Sales U.S.A., Inc., 86 F.3d 23, 26 (2d Cir. 1996)).

Defendants argue that a "natural" label is not a "written warranty" because the term "natural" is not an "affirmation of fact or written promise" that the sour cream products are "defect free" or "will meet a specified level of performance over a specified period of time." Plaintiff contends that because the MMWA "merely incorporates and federalizes state law breach of warranty claims," Plaintiff's breach of warranty claims under the New York Uniform Commercial Code and MMWA claims must "stand or fall together."[6] Then, citing the New York

---

[5] Defendants assert that Plaintiff's state law breach of warranty claims should also be dismissed because of (i) lack of privity, (ii) lack of pre-suit notice and (iii) lack of standing to bring breach of warranty claims under the laws of the forty-nine other states besides New York. Because the Court concludes that Plaintiff's breach of warranty claims must be dismissed because he fails to allege the existence of any "warranty," the Court need not reach Defendants' privity and notice arguments. With respect to Plaintiff's standing to bring warranty claims under the laws of all 50 states, Plaintiff "ha[s] Article III standing because [he] plausibly alleged an injury against [himself] by defendant, despite the fact that [he] also s[eeks] to bring claims on behalf of putative class members that [he] lack[s] Article III standing to assert on [his] own behalf." Sitt v. Nature's Bounty, Inc., Case No. 15-cv-4199, 2016 WL 5372794, at *4 (E.D.N.Y. Sept. 26, 2016) (citing NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co., 693 F.3d 145, 159 (2d Cir. 2012)). Nevertheless, because Plaintiff has failed to plead the existence of any warranty on Defendants' labels, the Court need not resolve these claims.

[6] Courts in this Circuit have concluded that the "MMWA creates no additional bases for liability" but simply "allows a consumer to recover damages under existing state law, and attorneys' fees." Brumfield v. Trader Joe's Company,

11

Uniform Commercial Code, Plaintiff argues that a reasonable consumer might interpret a "natural" or "all natural" label as "a factual claim upon which he or she could rely." N.Y. UCC § 2-313(1)(a). As a result, Plaintiff claims Defendants' labeling is an actionable warranty under New York law as well as the MMWA.

The Court disagrees. First, looking solely at the language of the MMWA, Plaintiff's suggestion that Defendants' "natural" or "all natural" labels could be construed to "promise" or "affirm" a "defect free" sour cream or a sour cream that "will meet a specified level of performance over a specified period of time" strains virtually any possible interpretation or definition of the term "natural." In re Frito-Lay North Am. Inc., All Natural Litig., 2013 WL 4647512, at *17 (citing Wilson v. FritoLay N. Am., Inc., Case No. 12-cv-1586, 2013 WL 1320468 (N.D. Cal. Apr. 1, 2013)). Such labeling is, at best, descriptive, not a "promise" or "affirmation." Mere product descriptions do not fall within the ambit of the MMWA. Bowling v. Johnson & Johnson, 65 F. Supp. 3d 371, 378 (S.D.N.Y. 2014) ("restores enamel" label was "at most a product description" because it was "not a promise of performance over time"); In re ConAgra Foods, Inc., 908 F. Supp. 2d 1090, 1102 (C.D. Cal. 2012) ("The statement that Wesson Oil is '100% Natural' is not an assertion that the product is defect free or that it will meet a specific level of performance over a specified period of time"); Wilson, 2013 WL 1320468, at *15 ("[N]one of the ["All Natural", "Low Sodium" or "No MSG"] labels promise that the product will meet a specified level of performance over a specified period of time" or that the product is "defect free").

Indeed, a "natural" label is no different than any of the myriad descriptive advertisements consumers view on a regular basis, including those describing a car as "fast" or a beverage as

---

Case No. 17-cv-3239, 2018 WL 4168956, at *4 (S.D.N.Y. Aug. 30, 2018); Kail v. Wolf Appliance, Inc., Case No. 15-cv-3513, 2017 WL 3608242, at *7 (E.D.N.Y. Aug. 21, 2017).

12

"refreshing." See, e.g., Forouzech v. Starbucks Corp., 714 F. App'x 776, 777 (9th Cir. 2018) ("iced" label did not "promise[] the iced drinks . . . would contain a specific amount of liquid"); Cruz v. Anheuser-Busch Companies, Inc., 682 F. App'x 583, 583-84 (9th Cir. 2017) ("light" label did not make an affirmation or promise as to the nutritional contents of the subject product); Becerra v. Dr Pepper/Seven Up, Inc., Case No. 17-cv-05921, 2018 WL 3995832, *9 (N.D. Cal. Aug. 21, 2018) ("The term 'diet' . . . does not create an express or implied warranty to consumers that the product will lead to weight loss or healthy weight management"); Viggiano v. Hansen Natural Corp., 944 F. Supp. 2d 877, 898 (C.D. Cal. 2013) ("premium" and "all natural flavors" label is not a warranty under the MMWA). "Natural," like "iced", "light", "diet," "premium," "fast" or "refreshing" "may be used in numerous contexts and may convey different meanings depending on that context"—as a result, "natural", alone, does not warrant any specified level of performance or promise that the product to which the label is affixed will be defect free. Ault v. J.M. Smucker Co., 2014 WL 1998235, at *3 (citing 75 Fed. Reg. 63552, 63586 (Oct. 15, 2010)).

Second, Plaintiff's attempt to seek refuge under state breach of warranty law as incorporated by the MMWA is unavailing. Under New York law, "to prevail on a claim of breach of express warranty, a plaintiff must show 'an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied on." Factory Assocs. & Exporters, Inc. v. Lehigh Safety Shoes Co., LLC, 382 F. App'x. 110, 111-12 (2d Cir. 2010). An express warranty is not a "generalized statement[] . . . such that a reasonable consumer would not interpret the statement as a factual claim upon which he or she could rely." Sitt v. Nature's Bounty, Inc., Case No. 15-cv-4199 (MKB), 2016 WL 5372794, at *15 (E.D.N.Y. Sept. 26, 2016). Here, a "natural" label cannot be a "factual claim upon which a

13

reasonable consumer could rely" because it is a subjective, general description that adopts a term with no standard or stable meaning.[7] See infra note 9. Indeed, "natural" does not warrant anything to a consumer—because it is not a fact that can be proven or disproven—just as "light" does not warrant specific nutritional content, "diet" does not warrant weight loss, "fast" does not warrant a particular speed, "refreshing" does not warrant a particular taste or feeling and "premium" fails to "indicat[e] the scope of what is being warranted." Viggiano, 944 F. Supp. 2d at 895. Accordingly, Plaintiff's breach of warranty claims under the MMWA and state law must be dismissed because the alleged warranty—that Defendants' natural label promises the subject product bears no connection to GMOs—is inconsistent with the definition of "warranty" under the MMWA and the New York Uniform Commercial Code.

D. *New York GBL § 349 et seq. and the Reasonable Consumer Test*[8]

Plaintiff's remaining claims allege violations of N.Y. GBL Sections 349 and 350, which prohibit deceptive business practices and false advertising, and are evaluated under the reasonable consumer standard. Orlander, 802 F.3d at 300 (consumer-oriented conduct is misleading, and thus in violation of N.Y. GBL §§ 349-50, if it is "likely to mislead a reasonable consumer acting reasonably under the circumstances" (internal citations omitted)). Though in most cases the reasonable consumer inquiry is fact-based, in "rare situations" courts may resolve

---

[7] Merriam Webster Dictionary defines "fact" as "a piece of information presented as having objective reality." Merriam Webster Dictionary (11th ed.) Similarly, the Oxford English Dictionary defines "fact" as "a thing that is known or proved to be true." Oxford English Dictionary (3d ed.) These definitions necessarily reject the notion that a "factual claim" can be premised on a word lacking a known meaning or "objective reality" in a particular context, e.g., food labeling.

[8] Defendants also assert that Plaintiff's injunctive relief claim should be dismissed because he no longer faces any threat of future deception now that he knows that cows may eat GMO feed, and that any warranty claims are defective. As a result, Defendants argue Plaintiff "admits that he is unlikely to purchase [Defendant's] products in the future." Plaintiff responds that because he "might" purchase the products again if the labeling is corrected, this possibility demonstrates a likelihood of future harm and establishes standing to seek injunctive relief. Because the Court is dismissing Plaintiff's claims, the Court need not decide whether Plaintiff would be entitled to injunctive relief.

Section 349 and 350 claims at the motion-to-dismiss stage where, as here, "the pleading does not plausibly allege that a reasonable consumer would be deceived." Podpeskar v. Dannon Co., Inc., Case No. 16-cv-8478, 2017 WL 6001845, at *3 (S.D.N.Y. Dec. 3, 2017) (citing Williams v. Gerber Prods. Co., 552 F.3d 934, 939 (9th Cir. 2008)).

    Defendants assert Plaintiff's allegations about what dairy cows eat and how they produce milk is speculative, and that as a result, Plaintiff's conclusion that the sour cream is "unnatural" is not only speculative but also implausible. On the other hand, Plaintiff claims that reasonable consumers would not consider Defendants' sour cream products "natural" based upon a series of assumptions about what the cows eat (genetically modified feed), how they produce milk (through accelerated production processes) and the extent to which these two factors mean the final sour cream product is not "organic" under the law. Crucially, Plaintiff never alleges that GMOs are actually present in Defendants' sour cream *even if* the cows whose milk produces the sour cream consume genetically modified feed. Because Plaintiff has (i) failed to plead facts sufficient to show that Defendants' "natural" labeling is actually deceptive and (ii) failed to demonstrate that Defendants' products contain genetically modified ingredients to the extent such a finding would render Defendants' "natural" labeling deceptive, the Court finds that Plaintiff has not stated a plausible claim to relief under New York GBL Section 349 or 350.

    First, Defendants' labeling is not deceptive to a reasonable consumer because, fundamentally, whatever reactions consumers might have to a product's literature, packaging, promotional jargon or imagery, there remains one insurmountable hurdle in Plaintiff's case: there is nothing deceptive about Defendants' product labeling. Cf. Mantikas, 2018 WL 6494356, at *4 (acknowledging reasonable consumers cannot be "misled about the quantity of an ingredient that obviously was not the products' primary ingredient" such as the quantity of "real

vegetables", as opposed to grain, in a cracker). Though it is beyond the province of this Court to define the precise parameters of what is "natural" or "unnatural" in the context of food labeling standards, Plaintiff's belief and conjecture as to how many degrees of separation from *some* GMO it takes to make a product's "natural" label deceptive or misleading is not adequate pleading. This is particularly true where the FDA has readily acknowledged the difficulty in defining what is "natural" where much of our food is "processed and is no longer the product of the earth." See FDA.gov. Instead, the FDA has issued unofficial guidance suggesting food products are "not natural" *only* where they contain "added color, artificial flavors, or synthetic substances."[9] Id. Plaintiff makes no such allegations.

Here, there are no man-made fillers and binding agents or artificial coloring. The products are sour cream without any other ingredients or additives, man-made or otherwise. Whatever connotations a consumer might associate with the product through the use of the word "natural," they are values or meanings that are solely within the province of the individual consumer and subject to that consumer's individualized experience. There can be no "one size fits all" meaning (the misuse of which results in deception) where a term is always subject to individualized and fluid interpretation. The fact that Plaintiff or any reasonable consumer or group of consumers might well assign a certain meaning to the term "natural" is not determinative. The issue is one of deception of a reasonable consumer, and with no surrogate or available sanctioned definition, the Complaint hardly states a viable claim when Defendants'

[9] Moreover, a brief look at Merriam-Webster Dictionary reveals that "natural", in its adjective form has at least 15 different meanings—from the color "natural", e.g., "off-white" or "beige", to "possessing or exhibiting the higher qualities (such as kindliness and affection) of human nature." Merriam Webster Dictionary (11th ed.) Without a more precise regulatory definition of "natural," and taking into account the wide array of other meanings associated with the term, Plaintiff's argument that there is some singular meaning, the misuse of which deceives reasonable consumers, is even more unconvincing.

products are exactly what they are represented to be—sour cream—without any detectable foreign, synthetic, toxic or artificial elements or ingredients.

To that end, Plaintiff's follow-on assertion that "natural" labeling is deceptive because reasonable consumers equate "natural" with "organic" is misplaced. Though there is at least some merit to Plaintiff's suggestion that Defendants and others may capitalize on consumers' widespread interest in organic, locally-sourced, humanely-butchered, grass-fed, cage-free, BPO-free, and GMO-free food options—among many other food-quality descriptors—in labeling products "natural," there is no factual support for Plaintiff's conclusion that "natural" is equivalent to either "organic" or "GMO free" or that reasonable consumers will be deceived by a package labeled "natural" that is neither "organic" nor "GMO free" and bears no "organic" or "GMO free" label. Accordingly, Plaintiff's assumption about what word associations consumers *might* make does not change the Court's conclusion that there is nothing deceptive about Defendants' "natural" labeling: not only is Defendants' use of the term "natural" consistent with agency guidance, but Plaintiff's attempt to equate "natural" with "organic" as a vehicle for alleging consumer deception is too divorced from our regulatory reality to survive the Twombly/Iqbal pleading standard.

Second, even if we assume Plaintiff is right and "natural" products are deceptively labeled to the extent they contain genetically modified ingredients, Plaintiff's claim still fails because he never alleges there are any genetically modified ingredients in Defendants' sour cream products—his claim rests solely on a string of inferences culminating in the assumption that GMOs in cows' feed somehow end up in Defendants' sour cream products even if they are not specific ingredients in Defendants' products or otherwise detectable.

Current federal law "prohibit[s] a food derived from an animal to be considered a bioengineered food solely because the animal consumed feed produced from, containing, or consisting of a bioengineered substance." 7 U.S.C § 1639(b)(2)(A). Although this provision of GMO disclosure law does not purport to regulate "natural" labeling, the underlying logic of the law counsels in favor of rejecting the attenuated inferences upon which Plaintiff relies, particularly because Plaintiff depends in large part on the existence of some relationship between "bioengineered" or "genetically modified" and "non-naturalness" to make his claims. Moreover, analogous cases, which survived motions to dismiss and challenged the use of "natural" in labeling, are distinguishable because in each instance a substance that was synthetic, or in some cases toxic, and clearly outside the meaning of natural, was present *as a named ingredient* in the challenged product. See, e.g., Buonasera, 208 F. Supp. 3d at 559, 565-66 (denying motion to dismiss where "natural"-labeled bath products contained clearly "synthetic and toxic ingredients"); Goldemberg, 8 F. Supp. 3d 479-80 (denying motion to dismiss where "Active Naturals" label was affixed to personal care product with "synthetic" ingredients); Petrosino, 2018 WL 1614349 at *7 ("[T]he Court cannot find that it is unreasonable as a matter of law for a person to expect that a product labeled 'natural' contain only non-synthetic ingredients"). But see Podpeskar, 2017 WL 6001845, at *5 (granting motion to dismiss where plaintiff failed to "allege that any ingredient used in the Products is unnatural" and finding Plaintiff's claim that "several steps back in the food chain, there may have been something unnatural ingested by a cow" could not satisfy the Iqbal/Twombly pleading standard).

Buonasera, Goldemberg and Petrosino are all consistent with FDA guidance suggesting food products are "not natural" where they contain "added color, artificial flavors, or synthetic substances" and therefore present plausible claims of misleading advertising and labeling. See

18

FDA.gov. Here, on the other hand, like Podpeskar, Plaintiff's claims relate to a product in which there are no contaminants, synthetic additives, or toxic materials or ingredients and as a result, no reasonable consumer could be misled. Plaintiff never actually alleges there are any genetically modified ingredients in Defendants' sour cream products and instead rests his complaint on the speculative premise that the feed consumed by dairy cows' renders the sour cream—several steps down the chain of production—unnatural simply because of the product's tenuous connection to GMOs. This assumption would directly contradict GMO disclosure law and is clearly distinguishable from "natural" labeling cases that survived motions to dismiss. Even construing Plaintiff's allegations in the best possible light, the Court cannot find that Defendants' "natural" labeling is likely to mislead a reasonable consumer acting reasonably under the circumstances.

Indeed, the Second Circuit recently acknowledged in Mantikas that in certain circumstances deceptive labeling claims must fail the reasonable consumer test as a matter of law because they are so far afield that a plaintiff's assertions about what a reasonable consumer thinks and understands lack any foundation in reality. Mantikas, 2018 WL 6494356, at *4 (citing Red v. Kraft Foods, Inc., Case No. 10-cv-1028, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2016) ("[t]he fact remains that the product is a box of crackers, and a reasonable consumer will be familiar with the fact of life that a cracker is not composed of primarily fresh vegetables")). Here too, Plaintiff's allegation that Defendants' sour cream can be properly classified as "genetically modified" and hence "unnatural" is so speculative, assumes too much about the meaning (or lack thereof) of "natural" and is so inconsistent with current federal law, that it fails to comport with reality. As a result, Plaintiff has not stated a plausible claim for which relief can be granted.

## V. CONCLUSION

The Court shares the litigants' impatience for guidance on "natural" labeling from the FDA or USDA. Nevertheless, Plaintiff alleges no facts and provides no legal basis to support a finding that Defendants' products are unnatural. Defendants' motions to dismiss are granted as to all claims.

SO ORDERED.

Dated: Brooklyn, New York
      December 18, 2018

                                                        s/RJD

                                        RAYMOND J. DEARIE
                                        United States District Judge